# CLARA BARTNES v. PITTSBURGH IRON ORE COMPANY.[1]

October 3, 1913.

Nos. 18,216—(247).

**Negligence — evidence — damages not excessive.**

In an action to recover for injuries sustained by plaintiff in consequence of the alleged negligence of defendant in its blasting operations at one of its iron mines, located in close proximity to a public highway, upon which plaintiff was passing at the time of her injury, it is *held*:

That the evidence sustains the verdict of negligence on the part of defendant; that the verdict is not founded in speculation or conjecture in respect to the fact that the injury came from defendant's mine; and that the damages awarded by the jury are not excessive.

Action in the district court for St. Louis county against Pittsburgh Iron Ore Company and the Consumers Ore Company to recover $30,-550 for personal injury received while walking on a public highway in close proximity to defendants' mines. The joint answer alleged that, if plaintiff was injured as a result of defendants' blasting operations, the same was the result of her own negligence and disregard of warnings and knowledge on her part that she was in a place where she was likely to be struck by material from the blasting operations in such mine, and that she voluntarily assumed the risk of such danger. The case was tried before Hughes, J., who of his own motion dismissed the action as to the Consumers Ore Company, and a jury which returned a verdict of $7,000 against the Pittsburgh Iron Ore Company. From an order denying defendant Pittsburgh Iron Ore Company's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

[1] Reported in 143 N. W. 116.

Note.—As to duty of those engaged in blasting, as to the safety of others, see note in 17 L.R.A. 729. And on the question of the liability for injury to person or property from concussion caused by blasting, see notes in 12 L.R.A. (N.S.) 389 and 27 L.R.A.(N.S.) 425.

*Alexander Marshall* and *P. J. McLaughlin,* for appellant.
*John Jenswold* and *C. R. Magney,* for respondent.

BROWN, C. J.

Defendants operate independent iron mines located near each other in St. Louis county. Considerable blasting is done in each for the purpose of dislodging earth and material for convenient removal from the mine. Each mine is an open pit, and at the time in question had been excavated to a considerable depth. Public highways extend along and adjacent to both and are much frequented by pedestrians who, when in the vicinity of the mines, are exposed to danger of bodily injury from the blasting operations, unless timely warned and thus enabled to get to a place of safety. The mine operated by the Pittsburgh Company is described in the record as the Brunt mine, and that operated by defendant consumers company, as the Hanna mine. Between these two is located the Wacouta mine, but that was not being operated on the day here in question. Blasting was being done in both the Brunt and Hanna mines. Plaintiff, a young lady of about 20 years of age, was a servant employed at a boarding house near the Hanna mine. Her sister, a married woman, resided a short distance from the Brunt mine. On the afternoon of the day in question plaintiff proceeded from the Hanna boarding house to the residence of her sister for a short visit. In doing so she passed along the highway immediately adjacent to the Brunt mine. On her return, and when at about an equal distance from each of the mines, she was struck and seriously injured by a stone and other material thrown by a blast from either the Hanna or Brunt mine. Within a short time after a blast was discharged at the Brunt mine, she was found on the highway unconscious from her injuries and removed shortly to a hospital. She recovered and thereafter brought this action for the injuries thus sustained, charging in her complaint a negligent discharge of blasts by both defendants without notice or warning to persons upon the adjacent highway. At the trial below a verdict was directed in favor of the Consumers Company, for the reason, as the court held, that there was no evidence to sustain a recovery against it, and the cause was submitted to the jury as to the

Pittsburgh Company alone. A verdict was returned against that defendant. Defendant subsequently moved in the alternative for judgment notwithstanding the verdict, or a new trial, and appealed from an order denying the same.

1. It is contended by defendant that the evidence wholly fails to show that the rock and material which struck and injured plaintiff came from the Brunt mine, or was the result of a discharge of a blast therein, and that the verdict affirming that such was in truth the fact rests entirely upon conjecture and speculation. No rulings of the court below are assigned as error, save the refusal of the court to direct a verdict for defendant, and the substantial ground of the appeal is the contention above mentioned.

The Brunt mine was at this time a large open pit, 300 feet wide and about 800 feet long, and had been excavated to a depth of about 60 feet in the center or north side with a series of "benches" on the south side. The company was engaged in stripping the mine; that is, removing the earth from the underlying body of iron ore. In doing this the "gopher hole" method of blasting was resorted to. This consists in boring holes horizontally into the bank of earth, inserting therein charges of powder, the explosion of which dislodges the bank so that the material may be loaded upon cars and carted away. On the occasion in question, upon one of the benches on the south side, three holes had been placed in the bank of the pit, into each of which a keg of powder weighing 25 pounds was inserted. After inserting the powder the holes were filled with loose earth and rock, and the blast discharged. Plaintiff was proceeding in a northerly direction, and the discharge of the blast was toward but not in direct range of the road upon which she was passing. At the time the blast was discharged she was in the neighborhood of 600 or 1,000 feet distant therefrom; the precise distance is left in much doubt by the evidence. No ground measurements were ever taken, and the estimates given by the witnesses alone furnish information upon the subject. Her position was to the left of a direct line from the blast holes. Her most serious injury, a fracture of the skull, was upon the left side of her head and back of the ear. Her face was consid-

erably disfigured and cut and bruised, but such injuries undoubtedly resulted from a fall face downward upon the rough and stony road.

While the Hanna mine was in operation at the time, the blasting there carried on was of an entirely different character. There the holes were bored into the bed of the pit, and the blasts were discharged directly into the air, and not horizontally as at the Brunt mine. Plaintiff was probably about the same distance from the Hanna mine when injured as from the Brunt mine, but it is highly improbable that a blast from that mine, discharged straight into the air would scatter stone and earth a distance of six or eight hundred feet from the base of the blast, unless of course the blast holes deflected, thus causing the blast to take a slanting course. But the evidence, as held by the trial court, wholly fails to justify the conclusion that the blasts from that mine were in any way responsible for the injury to plaintiff. Upon this the record is clear.

So we have only to determine whether the claim of plaintiff that her injury was the result of the blast from the Brunt mine rests in conjecture or speculation. Our examination of the evidence results in the conclusion that defendant's contention in this respect is not sustained by the record. An extended discussion of the facts will serve no useful purpose, and we are content with the statement that the evidence has been fully read and considered with the result stated. The principal injury to plaintiff, as already stated, was a blow upon the back of the head. She was going from the mine in a northerly direction, and the inference is clear, not merely conjectural, that the missile which struck her came from the direction of the Brunt mine. There is no suggestion in the record that she was injured otherwise than by a stone thrown by a blast from one of these mines, and for reasons stated, the evidence does not show that it came from the Hanna mine.

There is force in the claim of defendant that since the blast holes were directed toward the north bank of the pit, it is unlikely that any material would pass over that bank to the roadway beyond. But this is far from conclusive. Material from this blast did in fact pass above the opposite bank, some of which fell around and about the employee who was placed upon the bank near the highway to warn

pedestrians of an impending explosion. In fact the evidence tends to show that this result frequently followed, and was the reason for placing the watchman upon the bank. Plaintiff was seen by this employee near the mine immediately preceding the blast, but he made no effort to warn her, and supposed, as he testified, that she had ample time to reach a place of safety. Nor are we prepared to say as a matter of law that the blast would not throw stone and material the distance plaintiff was from the mine, probably about 1,000 feet. The holes in the bank were some 15 feet deep. A keg of powder weighing 25 pounds was placed therein at the extreme end, and the holes filled with loose material. The situation may be likened to the loading of a gun. For what distance this loose material would carry from a discharge of 25 pounds of powder, is not a matter wholly speculative. It is entirely probable, and we have no difficulty in holding that it was within the province of the jury to say, that it would send such material fully a distance of 1,000 feet, if not a greater distance. There was no expert evidence upon the subject, and the question was necessarily left to common knowledge and common experience in such matters, which the jury had the right to apply in determining the issues in the case. Plaintiff was unable to testify with respect to the accident. Her memory from the time immediately preceding the injury until some time after she regained consciousness was a blank; she could recall nothing relating to the injury or how it occurred. And we conclude, without further discussion, that the evidence, conceding its uncertainty in some respects, fairly and reasonably supports the verdict, and cannot be said to be wholly speculative or conjectural. Defendant's negligence was shown by its failure to warn plaintiff of the impending danger.

2. The further contention is that the verdict is excessive and the amount awarded, $7,000, given under passion and prejudice. In this we do not concur. Plaintiff's skull was fractured and particles of bone were removed therefrom. She suffered necessarily intense pain from her injury. Her face was permanently disfigured, and in some respects she had not at the time of the trial fully recovered. She received her injuries in April, 1910, and the action was tried in October, 1912. Though she may ultimately fully recover her normal

strength, her disfigured countenance and consequent humiliation will always remain. She was before the trial court and jury, and her actual condition was thus presented for their information. The court approved the verdict and we discover no sufficient reason for interference.

Order affirmed.